IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FRANK BETZ ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J.O. CLARK CONSTRUCTION, L.L.C., | ) | |
| MARK CLARK and CLARK & HOWELL | ) | |
| BUILDING GROUP, LLC, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | Civil Action No. 3:08-cv-00159 |
| and | ) | |
| | ) | |
| CLARK & HOWELL BUILDING GROUP, LLC, | ) | Judge Thomas A. Wiseman, Jr. |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | Magistrate Judge Juliet E. Griffin |
| | ) | |
| v. | ) | |
| | ) | |
| KEN HOWELL, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Frank Betz Associates, Inc. ("Betz") brings this action for the alleged infringement of its copyrights in home designs by defendants J.O. Clark Construction, L.L.C. ("JOC"), Mark Clark, and Clark & Howell Building Group, LLC ("C&H") (collectively, "Defendants"). Betz has filed a motion for partial summary judgment (Doc. No. 154) and Defendants have filed two separate motions for summary judgment, one on behalf of Defendants JOC and Mark Clark (Doc. No. 166), and one on behalf of Clark & C&H (Doc. No. 170). The Court will consider Betz's motion first, and will then take up Defendants' respective motions. For the reasons set forth herein, Betz's motion will be granted in part and denied in part, and the Defendants' motions will be denied.

## I.      STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position. *Celotex*, 477 U.S. at 324.

In deciding a motion for summary judgment, the Court must presume that the evidence of the non-moving party is true, and must resolve all doubts and inferences in favor of the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

The standard of review for cross motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). Significantly, "[t]he filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co.,* 929 F.2d at 248 (citation omitted). Rather, in reviewing cross motions for summary judgment, courts are to "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). In light of these principles, prudent litigants will respond in full to an opposing party's motion for summary judgment, independently of and without relying upon their own summary judgment filings.

## II.     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Betz moves for partial summary judgment on the following issues:

(1) that Betz owns valid copyrights in the home designs (the "Betz Designs") with respect to which it makes infringement claims against Defendants;

(2) that Defendants had access to the Betz Designs;

(3) that the Defendants' allegedly infringing plans are, as a matter of law, substantially similar to the corresponding Betz Designs;

(4) that there is no competent evidence in the record to support the affirmative defenses raised by Defendants in their respective Answers to Betz's Second Amended Complaint; and

(5) that defendant Mark Clark is individually liable for infringement in this case because he owned and controlled the two entity defendants.

(See Pl.'s Mot. Partial Summ. J., Doc. No. 154, at 2.)

As set forth below, the Court finds that Betz has established the absence of any material factual disputes, and that it is entitled to judgment in its favor as a matter of law, with respect to the issue of whether it owns valid copyrights in the Betz Designs and whether Defendants had access to the Betz Designs. Partial summary judgment will be rendered in favor of Betz as to those issues. The record as developed by Betz, however, does not support a conclusion that the allegedly infringing plans are substantially similar to the corresponding Betz designs, so summary judgment as to that issue will be denied. Summary judgment will be granted in favor of Betz as to most of Defendants' affirmative defenses. Finally, because the Court does not reach the issue of ultimate liability, it would be premature to consider the question of whether Mark Clark would be individually liable for the entity defendants' alleged copyright infringement. Summary judgment on that issue will be denied.

### A. Procedural Background

Betz filed its initial complaint on February 19, 2008 against JOC and Mark Clark only. It filed an Amended Complaint also naming C&H as a defendant on March 21, 2008. After obtaining the Court's permission, C&H filed a third-party complaint against Ken Howell, Mark Clark's business partner in the formation of C&H. Betz filed its Second Amended Complaint on August 31, 2009, expanding the number of designs whose copyrights it alleges have been infringed by the Defendants. Discovery has apparently been completed; trial has been rescheduled several times and is currently set for February 8, 2011; and the parties have now filed their respective motions, all of which have been fully briefed.

### B. Factual Background

The facts set forth herein are undisputed for purposes of Betz's motion unless otherwise noted.

To the extent there is a dispute, the facts are viewed in the light most favorable to the Defendants as the non-moving party.

Defendant Mark Clark is a home builder. Although he had been in the business for a number of years prior, he formed JOC around 2002 to build houses in and around Murfreesboro, Tennessee. Defendant Mark Clark has always owned and controlled JOC, and has always served as its manager in charge of day-to-day activities of the company. On January 1, 2007, Mark Clark started a new building company, C&H, with Ken Howell. Mark Clark has owned and controlled C&H since its inception, and has served as its manager in charge of the day-to-day functions of the company.[1] Ken Howell, who has been sued as a third-party defendant by defendant/third-party plaintiff C&H, owned and operated a home-building company called Stones River Homes, Inc. ("Stones River") beginning in about 2001, before going into business with Mark Clark in 2007.

None of the defendants is in the business of designing home plans.

Betz, a nationally recognized, award-winning home designer, has been in business since 1980 and has an inventory of around 1,400 copyrighted home designs. It licenses its designs on a non-exclusive, non-transferable basis to its customers, who are usually builders or individual homeowners.

Betz registered the copyrights of the home-plan designs that are at issue in this case, identified below, and has attached copies of the Certificates of Registration for each design as exhibits to its summary judgment filings. The deposit materials submitted to the United States Copyright Office in conjunction with the copyright registration applications have likewise been submitted by the plaintiff, and generally include a page excerpted from Betz's home plan magazine, "HOMEPLANS Designed for Today's Market" ("Homeplans"), and the floor plans and elevation drawing pages from the working drawings for each design. The twenty-eight Betz home-design plans that appear to be at issue in this case (the "Betz Designs"), the dates upon which Betz's copyright in each plan became effective, and the dates of first publication for each of the Betz Designs are as follows:

| Home Design Name | First Date of Publication | Date of Copyright Registration |
|---|---|---|
| "Brewster" | August 1, 1998 | May 9, 2000 |
| "Willow" | February 1, 1998 | March 28, 2000 |

---

[1] There is no information in the record regarding Ken Howell's role in the company.

| | | |
|---|---|---|
| "Northampton" | February 1997 | April 10, 2000 |
| "Waycross" | September 1, 1990 | June 5, 2000; supplementary registration April 14, 2004 (registered as technical drawing rather than architectural work) |
| "Barfield" | February 1, 1998 | April 18, 2000 |
| "Belgrave" | February 1, 1995 | August 14, 2000 |
| "Vinings" | August  1,1993 | June 28, 2000 |
| "Quebec" | August 1, 1998 | April 18, 2000 |
| "Beaufort" | August 1, 2001 | August 15, 2001 |
| "Candler Park" | August 1, 2003 | August 6, 2003 |
| "Carswell" | August 1, 2001 | August 15, 2001 |
| "Middleton" | August 1, 1996 | December 2, 1998 |
| "Holland" [2] | February 1, 1994 | April 3, 2000; supplementary registration April 25, 2006 |
| "Laredo" | February 1, 1998 | July 18, 2000; supplementary registration April 25, 2006 |
| "Ambrose" | February 1, 2001 | March 29, 2001 |
| "Aldridge" | August 1, 1992 | December 7, 1998 |
| "Ethridge" | August 1, 1996 | September 25, 2000 |
| "Clairmonte" | August 1, 1993 | July 24, 2000 |
| "Crestwood Place" | February 1, 2000 | November 14, 2000, supplementary registration April 25, 2006 |
| "Sullivan" | February 1, 1999 | March 28, 2000 |
| "Morningside" | August 1, 1999 | April 25, 2000, supplementary registration April 25, 2006 |
| "Bullock" | August 1, 2001 | August 15, 2001 |
| "Dunleavy" | February 1, 2003 | January 15, 2003 |
| "Oakland Hills" | February 1, 2002 | February 5, 2002 |

---

[2] The Holland design is not listed in the plaintiff's motion as one of the copyrighted designs regarding which it brings an infringement claim against Defendants.  (Doc. No. 154, at 2.)  It is, however, included on the list set out in the Second Amended Complaint and is discussed in Betz's memorandum and other filings in support of summary judgment.  The Court therefore concludes its omission from the actual motion was in oversight and that Betz has stated a claim for violation of its copyright in the Holland.

| "Tuscany"   | February 1, 2002 | February 5, 2002 |
| "Hillsdale" | August 1, 1996   | June 21, 2000    |
| "Savannah"  | August 1, 1992   | April 3, 2000    |
| "Barcelona" | August 1, 1996   | April 18, 2000   |

(*See* Doc. Nos. 157–161 (Copyright Registration documents); Defs.' Resp. to Pl.'s Statement of Undisp. Facts, Doc. No. 180 (hereafter, "Doc. No. 180") ¶¶ 2–57, 86, 88.)

Betz contends in its Statement of Undisputed Facts that copies of the Defendants' "Adams" plan, "Arthur" plan, "Brookline" plan, "Charleston" plan, "Pinehurst" plan, "Reagan" plan, "Jamestown" plan, "Arlington" plan, "Beaufort" plan, "Brewster" plan, "Brewski" plan, "Candler Park" plan, "Carswell" plan, "Crooked Stick" plan, "Johnson" plan, "# 2066" plan, "# 2817" plan, "# 2848" plan, "Washington" plan, "Roosevelt" plan, "Kennedy" plan, "# 0000 D" plan, "# 0000 E" plan, "# 1467" plan, "Lincoln" plan, "Ambrose" plan, and "Amber" plan, all filed as exhibits to the Second Amended Complaint were "used in the marketing and/or construction of homes by at least one of the Defendants." (Pl.'s Statement Undisp. Facts, Doc. No. 163 (hereafter, "Pl.'s SUF"), at ¶¶ 58–81, 84, 85.) In support of each these averments, Betz cites to the same fifty-plus pages of the transcript of defendant Mark Clark's deposition (M. Clark Dep., Doc. No. 163-1 ("Clark Dep."), at 147:2–168:19, 174:6–181:21, and 184:11–208:14.)

The Court agrees with Defendants that the citations to the record in support of these statements are insufficiently specific and in that regard do not comply with LR 56.01. Notwithstanding, the record citations to Mark Clark's deposition testimony generally establish that Defendants either used depictions of these plans on their website for marketing purposes or actually built houses based on the designs for the Adams, Arthur, Charleston, Pinehurst, Reagan, Jamestown, Arlington, Beaufort, Brewster, Candler Park, Carswell, Crooked Stick, Lincoln and Ambrose plans. As far as the Court can ascertain, however, the referenced testimony does not refer to the other plans identified in the plaintiff's statement of undisputed facts.

It is undisputed, for purposes of the plaintiff's motion, that Betz established its website, www.frankbetz.com, in 1997, at which time every active home-plan design in Betz's inventory of home designs was published and made available to consumers on the website. As of fall 1997, the designs

available on-line included the "Northampton," the "Waycross," the "Belgrave," the "Vinings," the "Middleton," the "Holland," the "Aldridge," the "Ethridge," the "Clairmonte," the "Hillsdale," the "Savannah," and the "Barcelona" designs. As new home-plan designs were created, Betz published them in various print publications, including its home-plan magazine, Homeplans, which included contact information for Betz so that prospective customers could contact Betz to order licenses and, once the website was established, included the website address as well.

The date upon which each home design was published either on-line or in the Homeplans magazine is the date identified on the copyright registration certificate for the design as the "date of first publication." Each new Betz design was published on the Betz website no later than the date identified as the "date of first publication" on the copyright registration certificate. These dates, as identified by Betz, are set forth in the chart above. Defendants do not dispute, at least for purposes of summary judgment, Betz's assertion that each of the Betz plans allegedly infringed by the Defendants has been continuously available on the Betz website since each was first published on the website, and all of the designs are still available on the Betz website today except the "Clairmonte," the "Vinings," and the "Waycross."

From 1990 until about 2008, Betz's Homeplans magazine was "poly-bagged" with "Builder" magazine, which means that the Homeplans magazine was delivered to all subscribers of Builder magazine during this time frame. In addition, during the same period, every person or entity that purchased a license for a Betz home design was automatically added to a mailing list and was then sent copies of the Betz Homeplans magazine directly as the magazine was published. Mark Clark testified that he received Builder magazine, and that he "remember[ed] it showing up rather frequently" basically "throughout his career," at least "from the mid-to-late '90s on." (Clark Dep. 53:11–22.) He also testified, however, that he never actually picked up the magazine and went through it—he just remembered the cover. (*Id.* 53:22–54:3.) He was aware of the Betz Homeplans magazine because "it just ended up in [his] mail." (*Id.* 54:20.) Ken Howell testified that he received Builder magazine because he was a member of the Home Builders Association.

After Mark Clark formed JOC in 2002, he purchased from Betz limited, non-transferable, non-exclusive licenses on behalf of JOC for the use of the following Betz designs on the following dates:

"Holland," June 18, 2002, single construction; "Ambrose," January 14, 2005, single construction; and "Lakeshore," April 17, 2006, multiple construction. (L. Segers Decl., Doc. No. 156, at ¶ 67.) Ken Howell, while he was still conducting business through Stones River Homes, Inc., purchased from Betz a number of limited, non-transferable, non-exclusive licenses for either single or multiple construction, for use of approximately twenty-five Betz designs, from July 2001 through August 2007.

Based upon the dates they first purchased licenses to use a Betz design, Mr. Clark was obviously aware of Betz's existence and its home design business no later than June 18, 2002, and Mr. Howell was aware of Betz's existence and its home design business no later than July 27, 2001. Because they had licensed plans from Betz, Messrs. Clark and Howell were automatically added to Betz's direct mailing list and were sent copies of the Betz Homeplans magazine as those copies were published for several years after their first license purchase from Betz.

Although Betz alleges that defendant C&H has never licensed any Betz designs, Ken Howell testified in his deposition that after the formation of C&H, Stones River never purchased any more plans for construction by Stones River. Rather, plans purchased after the formation of C&H using Stones River's credit card were purchased "strictly" for C&H and for construction by C&H; the use of the credit card was basically for convenience because C&H did not have a credit card with which to make internet purchases, and C&H reimbursed Stones River for each purchase. (K. Howell Dep., Doc. No. 178-1 (hereafter, "Howell Dep."), at 111:6–112:20.) Betz contends, however, that each license purchased, whether by JOC or by Stones River Homes, was non-transferable to any other entity or person. Defendants do not dispute that contention, but maintain that Ken Howell represented to Mark Clark that C&H could use the Betz plans he brought into C&H from Stones River Homes. (Howell Dep. at 107:13–18.)

In September 2003, Betz first became aware of the existence of a draftsman named Chris Turner and his website, Turner Home Designs, and began to look into whether he might be copying Betz designs. (See Turner Dep. at 63:16–23.) The suspicion was allegedly confirmed in 2005, when Betz determined that Turner had copied a number of Betz's plans and posted them on his website for sale over the internet. (Taylor Decl. ¶ 8.) After this discovery, in September 2005, Betz filed suit against Turner in this Court, Case No. 3:05-cv-00676 (the "Turner Action") alleging that at least ninety plans offered for sale

by Turner on his website infringed upon Betz's copyrighted designs.  Turner and his insurance carrier ultimately settled the claims against Turner and paid Betz $225,000 as part of that settlement.

Betz asserts that it first learned of the possibility of copyright infringement by the Defendants in 2007, when Betz employee Eric Taylor discovered houses in the Murfreesboro, Tennessee area that appeared to be constructed by JOC from designs that were strikingly similar to Betz designs.  After this alleged discovery, Taylor reviewed Betz files to confirm that JOC had not purchased licenses to use some of the Betz designs at issue.  (Pl.'s SUF ¶ 108 (citing E. Taylor Decl., Doc. No. 155 ("Taylor Decl."), at ¶ 10).)  Defendants deny a portion of this contention, citing to the deposition testimony of Eric Taylor indicating Betz received discovery answers in the course of its litigation with Chris Turner in February 2006 identifying JOC as one of Turner's customers, and indicating JOC had purchased from Turner in 1999 a home design plan that allegedly infringed on one of Betz's plans.  (Taylor Dep., Doc. No. 168-1 ("Taylor Dep."), at 73–82.)  Betz did not contact JOC in 2006 or any time after receiving these discovery responses from Turner to alert JOC to the possibility that it might have purchased a plan that violated Betz's copyright.  (Taylor Dep. at 83:7–15.)

Mark Clark testified that he personally never provided Chris Turner with plans in any format for him to convert into working drawings, and also testified that he never brought Turner plans from another designer, such as Betz, for Turner to modify.  (Clark Dep. at 151:18–152:24.)  Ken Howell, when asked if he ever brought plans to Chris Turner for him to modify, testified:  "I can recall bringing plans to [Turner] and saying, "Do you have anything similar to this?'  And if he did, we would modify it." (Howell Dep. 58:3–7.)  He specifically acknowledged that he had done that with Betz plans for which he did not have a license, that is, he would take an unlicensed Betz plan to Chris Turner, ask him if he had a plan similar to the Betz plan.  Turner's response was sometimes yes and sometimes no.  If Turner did have similar plans, then they would "start with" Turner's plans, "do the mark-ups," and then Howell would purchase that plan from Turner.  If Turner did not already have a similar plan, then Howell would purchase the plan from Betz.  (Howell Dep. 58:8–59:10.)  Turner testified that he did not recall ever selling a plan from his inventory to Mark Clark or JOC, though he apparently did sell plans to Ken Howell or Stones River.  (Turner Dep. at 66:1–7; 71:8–11; 77:1–9.)  He recalled that Clark usually brought him a sketch (which he described as usually being on a piece of notebook paper and looking like "chicken scratch") from which

Turner would develop a plan. (Turner Dep. at 65:11–66:12.) Turner never asked Clark where the ideas for the sketches came from. (Turner Dep. at 66:14–16.)

Betz posits that each of the Betz designs at issue in this case is owned by Betz and was independently created, without reference to any other work except, in some cases, the Betz designs may be derived from an earlier plan design also owned and independently created by Betz. (Pl.'s SUF ¶ 114 (citing Taylor Decl. ¶ 7).) Defendants, without commentary or elaboration, refute that statement, referring to the deposition testimony of Frank Betz, the founder and majority owner of the company; Charles Stewart, a senior draftsman employed by Betz for over twenty-three years and designer of at least one of the plans at issue in this litigation; and Russell Moody, the current president of Betz and designer of Betz's Holland plan.

The referenced deposition testimony from Frank Betz, however, only indicates that Betz, in the company's early years, got its start by taking designs brought to it by larger home builders and turning those sketches into construction drawings, and that a few designs from smaller home builders that Betz formalized and turned into construction drawings made it into Betz's first book of home plan designs. (Frank Betz. Dep., Doc. No. 168-4 ("Betz Dep."), at 4:21–6:21.) Frank Betz also testified that he looked at his competitor design companies' plan books "to see what the competition's doing and what kind of product they're putting out there," but did not really get ideas from looking at that material, or anyway, "not a whole lot. Maybe a couple here or there, but nothing to speak of." (Betz Dep. 14:18–15:5.) Charles Stewart testified that he "looked in magazines" and "visited neighborhoods . . . just to look and see what other people were doing," and that he obtained some of the ideas for his designs that way. (C. Stewart Dep., Doc. No. 168-5, at 9:18–10:3.) The referenced excerpt from Russell Moody's deposition is confusing, but in it Moody stated that he designed the Holland, which was derivative of the Gleason, which was derivative of the Amsterdam, which was also designed by Moody. However, he appeared to be stating that the Gleason was related to the Briarwood, which originated as a Wilmot Williams plan and not as a Betz plan. (R. Moody Dep., Doc. No. 180-2, at 4:19–6:21.)

In any event, the deposition testimony referenced by Defendants does not actually refute the plaintiff's assertion that the designs at issue in this case were independently created by Betz. To the extent Betz designers obtained inspiration from other sources does not suggest that their designs were

not independently created.

    C.    Analysis and Discussion

    Pursuant to authority granted by the United States Constitution,[3] Congress has enacted the Copyright Act, 17 U.S.C. § 101 *et seq.*  Generally, the Copyright Act protects "original works of authorship fixed in any tangible medium of expression," including, among other categories, "architectural works."  17 U.S.C. § 102(a).  Copyright protection, unlike patent protection, does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  *Id.* § 102(b).  The copyright statute grants owners of protected works the exclusive right to reproduce copyrighted works, to create derivative works based on original works, to distribute copies of the works, and to perform or display the works publicly.  *Id.* § 106.  "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright."  17 U.S.C. § 501(a); *see Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 423–33 (1984).

    Prior to 1990, when the Copyright Act was amended to bring it into compliance with the Berne Convention, architectural plans received minimal protection as "pictorial, graphic, and sculptural works" subject to the "useful article doctrine," 1-2 Nimmer on Copyright § 2.08, and architectural structures *per se* received no protection, "except those few that served no utilitarian purpose."  *Id.* § 2.20.  The 1990 Amendment to the Copyright Act, also called the Architectural Works Copyright Protection Act ("AWCPA"), added a new category of protectable "architectural works" in order to bring the Copyright Act into compliance with the Berne Convention.  Under the AWCPA, an "architectural work" is defined as:

> the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101 (1990).  While "standard features" are not protected, "the creator's independent selection and arrangement of component parts into an overall, original design" may be protected. 1-2 Nimmer § 2.20 (internal citation omitted). The expressions "overall form" and "standard features" are designed to give the courts guidance "regarding the nature of the protected matter" in what must be an *ad hoc*

---

[3] The Constitution authorizes Congress to pass laws "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries. . . ."  U.S. Const. art. I, § 8, cl. 8.

analysis of the extent of protection warranted.  *Id.*; *see also* H.R. Rep. No. 101-735, (reprinted at U.S.S.C.A.N. at 6952 (1990) ("Functional considerations may, for example, determine only particular design elements.  Protection would be denied for the functionally determined elements, but would be available for the nonfunctional determined elements.  Under such circumstances . . . the courts [should] determine the scope of protection. . . .  Evidence that there is more than one method of obtaining a given functional result may be considered in evaluating registrability or the scope of protection.")).  Architectural works created on or after December 1, 1990, qualify for protection under the AWCPA.  1-2 Nimmer § 2.20.

To establish a claim of copyright infringement generally, a plaintiff must show:  (1) that he owns a valid copyrighted work; and (2) that the defendant copied protectable elements of that work.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003)).  "The first prong tests the originality and non-functionality of the work, both of which are presumptively established by the copyright registration.  The second prong tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter)."  *Id.* (citations omitted).  Because direct evidence of unauthorized duplication is "rarely" available, the copyright holder may also prove copying indirectly by showing both that (1) "the defendant or the person who composed the defendant's work had access to the copyrighted material and [(2)] the defendant's work is substantially similar to the protected work."  *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 276–77 (6th Cir. 1988) (internal citation omitted).

In assessing substantial similarity, courts must first determine which aspects of the copyrighted work are protectable by copyright, before assessing whether the allegedly infringing work is substantially similar to the protectable elements of the copyrighted work.  *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003).  "The essence of the first step is to filter out the unoriginal, unprotectable elements—elements that were not independently created by the inventor, and that possess no minimal degree of creativity, through a variety of analyses."  *Id.* (citation omitted).

It is under these principles that the Court must consider whether Betz is entitled to summary judgment on the issue of Defendants' liability for copyright infringement.  As indicated above, Betz seeks

judgment in its favor as to both prongs of the *prima facie* test of copyright infringement: (1) that Betz owns a valid copyright in each of the plans at issue; and (2) that the defendants copied protectable elements of Betz's designs. Betz seeks to prove the second element indirectly, that is, by showing that Defendants had access to Betz's designs, and that Defendants' designs are "substantially similar" to the protectable elements of the corresponding Betz designs.

### 1. Whether Betz Owns Valid Copyrights in the Betz Designs at Issue

Betz moves for summary judgment on the issues of ownership and validity for all twenty-eight of the Betz Designs, and asserts that the copyright registration documents attached to its Second Amended Complaint constitute *prima facie* evidence of ownership of a valid copyright in each design, as well as *prima facie* evidence of the protectability of the designs. Betz also points to evidence in the record—the Declaration of its expert, Eric Taylor, filed in support of summary judgment—that "[e]ach of the Betz Designs is owned by Betz and was independently created, without reference to any other work except, in some cases, the Betz design may be derived from an earlier plan design also owned by Betz and itself independently created." (*See* E. Taylor Decl., Doc. No. 155, at ¶ 7.)

In their responses, Defendants argue first that copyright registration should not give rise to any presumption of validity, and alternatively, that even if there is such a presumption, the presumption is rebutted here by evidence that many of the copyrights are invalid. Specifically, Defendants argue that Betz has obtained copyrights on derivative designs without disclosing that they are derivative, or, even when it did disclose the designs were derivative, it did not describe the changes made between the original and the derivative works, and therefore did not comply with 17 U.S.C. § 409(9). Second, Defendants argue that the presumption of validity is rebutted by the length of time between first publication and copyright registration, which Defendants claim exceeds five years for either seven or eleven of the twenty-eight designs, depending on how the period is calculated.[4] Defendant C&H reiterates the other defendants' argument that Betz has failed to offer any evidence establishing which portions of its designs consist of something other than functional, utilitarian features that are not subject to

---

[4] The Court counts either seven or ten, rather than eleven, designs whose effective copyright date is potentially more than five years after the first date of publication: the Waycross, Belgrave, Vinings, Holland, Aldridge, Clairmonte, and Savannah designs, and potentially the Laredo, Crestwood Place and Morningside designs if the date of their supplementary rather than original copyright registration is considered.

copyright protection.[5]

  In the context of its own motion for summary judgment, JOC raises several arguments that it did not present in opposition of Betz's motion.  For instance, it argues that Betz's marketing materials that appear on its website and in its plan books do not provide enough information for a contractor to build a house, and that the construction drawings Betz sells or licenses "provide enough information to allow a contractor to build a skeleton of a house (i.e., weatherproof exterior enclosure and interior wall positions, door and window locations, general arrangement of kitchen, etc.), but a structure built according to the information disclosed in the Plaintiff's construction drawings would not be marketable to the general public as a home."  (Doc. No. 167, at 12.)  JOC also contends that with respect to designs that allegedly

---

[5] Defendants also raise the following general objection to the Plaintiff's motion:

> A fundamental problem with the Plaintiff's position in this case is that it attempts to blur the difference between a technical drawing copyright and an architectural work copyright.  It is very clear that a drawing embodying the design of a building can be copyrighted both ways.  But the scope of copyright protection for each is different.  The technical drawing copyright is not infringed by the construction of a building.  The architectural work copyright is not infringed by the copying of the drawing.

(Doc. No. 177, at 2 (internal citations omitted).)  This assertion is somewhat beside the point insofar as there is no dispute in this case that all the Betz Designs but one, the Waycross, are registered as "architectural works" under the AWCPA, and not as "technical drawings."  The statement that an architectural work copyright is not infringed by the copying of a drawing is simply incorrect.  As set forth above, the term "architectural work" is defined by statute as "the design of a building as embodied in *any tangible medium of expressio*n, *including a building, architectural plans, or drawings*."  17 U.S.C. § 101 (emphasis added).  Moreover, the copyright holder has the exclusive right to reproduce or prepare derivative works based upon the copyrighted work. 17 U.S.C. § 106.  As a result, it is generally accepted that if a person copies architectural drawings copyrighted under the AWCPA and then builds a house based on the infringing copy, he has infringed the copyright in the original plans both by copying the drawing and by building the house.  *Cf. T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 107 (1st Cir. 2006) (noting that the district court had erred initially by incorrectly relying on pre-AWCPA law to conclude that a building could not infringe an architectural work as embodied in an architectural plan); *Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, No. 2:05-cv-711-ENV-ETB, 2007 WL 708798, at *6 (E.D.N.Y. March 6, 2007) (rejecting the defendants' argument that only the person who actually produced the blueprints for the infringing home (working largely from plaintiff's marketing materials) could be liable, but that defendants, as builders who simply took the infringing blueprints and built a house from them but were not involved in the creation of the design, could not be liable, stating:  "Unfortunately for defendants, the law draws no such distinction. . . .  Liability under the [AWCPA] is not limited to actors who draw the blueprints of a structure, nor should the statute be read in such a way.  The most egregious examples of structural infringement will not involve an infringing architect; they will involve an infringing builder who simply steals an architect's design."); *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560, 1568 (M.D. Fla. 1995) (holding that both a homeowner and builder were liable as direct infringers due to their involvement in the design and construction of a residential home); 1-2 Nimmer on Copyright § 2.20 (noting that "infringement may lie regardless of whether access to the three-dimensional work is obtained from a two-dimensional or three-dimensional depiction thereof" (quoting H.R. Rep. No. 101-735, 101st Cong., 2d Sess. 19 (1990)).  The case to which Defendants cite, *Morgan v. Hawthorne Homes, Inc.*, No. 04-1809, 2009 WL 1010476 (W.D. Pa. April 14, 2009), is factually and legally distinguishable on a number of grounds.

predate the AWCPA, such as the Amsterdam (with respect to which no copyright infringement claim has been asserted) and the Waycross, Betz was required to register the copyrights as pictorial, graphic or sculptural works rather than as architectural works. Further, according to JOC, because the Holland and Ethridge designs are derivative of the Amsterdam and Waycross, respectively, only those elements of the more recent designs that differ from the works from which they are derived are protectable as architectural works.

As discussed below, none of these arguments has merit.

a.  *Failure to Register Works as "Derivative"*

First, as for Defendants' contention that failure to register a design as a derivative work rebuts the presumption of copyright validity, the case on which Defendants rely actually stands for the proposition that "failure to alert the Copyright Office to relationships between the work for which registration is sought and prior works *of others* endangers the presumption of validity." *Gibson Tex, Inc. v. Sears Roebuck & Co.*, 11 F. Supp. 2d 439, 442 (S.D.N.Y. 1998) (emphasis added). Here, the evidence indicates that Betz's derivative designs are derivative of prior works *by Betz*, not of prior works "of others."

Regardless, even if Betz's failure to specifically identify works as derivative of other works by Betz did eliminate the presumption of validity, Betz has offered evidence, which Defendants have not called into question, that the copyrighted works were all created by Betz. Defendants likewise have made no real attempt to show that the designs at issue do not possess the requisite "minimal degree of creativity" required for copyrightability. The Supreme Court has instructed that "[o]riginal . . . means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity," even if the work is not a "novel" one. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345–46 (1991) (originality requires both "independent creation plus a modicum of creativity"). And although considered "constitutionally mandated," the threshold showing of originality is not a demanding one. *Id.* at 345 ("To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice."). Betz has presented sufficient evidence indicating its designs were independently created and incorporate a minimal degree of creativity. Defendants have not pointed to any evidence in the record that would create a material factual dispute as to this issue.

b. *Failure to Comply with 17 U.S.C. § 409(9)*

The Copyright Act requires that the application for copyright registration of a derivative work, which must be on the form prescribed by the Register of Copyrights, "shall include . . . an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." 17 U.S.C. § 409(9). Defendants here argue that even where Betz identified a design as derivative in its copyright applications, it failed to comply with § 409(9), thereby "throw[ing] into question the validity of the copyright registrations for all of the Plaintiff's 'derivative works.'" (Doc. No. 177, at 6 (quoting *GB Marketing USA, Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763, 774–75 (W.D.N.Y. 1991)).)

*GB Marketing*, the only case to which Defendants cite in support of their position, does not actually help them, as that case held that *deliberate* failure to disclose on a registration form that a design makes use of elements that were *of some other person's creation* would rebut the presumption of copyright validity. The issue raised by § 409(9) is whether and to what extent the derivative design incorporates elements designed by someone else. Where, as here, the evidence indicates that Betz created derivative designs based on its own original designs, the concerns that § 409(9) raises are not implicated. Betz's apparently innocent failure to provide additional detail in filling out the form provided by the Register of Copyrights when it registered works that were derivative of its own prior works does not, under the facts presented, rebut the presumption of copyright validity.

c. *Validity of Architectural Work Copyrights in Works that Are Derivative of Betz Designs that Predate the AWCPA*

Defendants further contest the degree of protection that should be afforded more recent Betz Designs that are derivative of Betz designs that were published prior to the enactment of the AWCPA. As indicated above, JOC argues that certain of Betz's designs (the Amsterdam and Waycross) are not protected as architectural works because they were published or copyrighted as pictorial, graphic or sculptural ("PGS") works before the enactment of the AWCPA. Consequently, although those designs themselves would be protected, "a copyrighted PGS work is not infringed by the construction of a building based on that work." (Doc. No. 167, at 15 (quoting *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 469 F. Supp. 2d 1148 (M.D. Fla. 2006) (other citations omitted).)

Without citing to any case law in support of its extrapolation, Defendants proceed from that

principle to argue that the only elements of the later derivative designs that are entitled to protection under the AWCPA are those elements not found in the pre-AWCPA designs. Besides the fact that Defendants have not actually established what the differences are between the original and derivative designs at issue, the law is clear that when the same person designed both an original and a derivative work based on that original, the derivative work carries forward all preexisting copyrights in the original work, even if the copyrights in the original work were never actually registered. Moreover, where the original work predates the AWCPA but the derivative work is registered as an architectural work under the AWCPA, the derivative work is fully protected under the AWCPA. In that regard, in a case involving closely analogous facts and arguments by the defendant, a district court in Virginia stated as follows:

> where the same creator owns both the original and derivative copyrights, the only sound interpretation of the Copyright Act is that the derivative work carries forward all preexisting copyrights in the original work. *See Rexnord, Inc. v. Modern Handling Systems, Inc.*, 379 F. Supp. 1190 (D. Del. 1974). In *Rexnord* the court held that "it would be consistent with the statutory scheme, as well as with the language of Section 3 [of the Copyright Act]" that a catalogue derived from other catalogues owned by the same author incorporates the prior copyrights. 379 F. Supp. at 1198. Under a contrary principle, the owner of a compilation or derivative work would have to allege and prove multiple copyright violations, depending upon the exact number of prior copyrights incorporated into a subsequent work. Modifications of preexisting works by their owners could be discouraged by the prospect of losing copyright protection. As the owner of original copyrights creates derivative works, the opportunity to prove access to the original material may diminish as this material drops out of circulation and becomes subsumed into the owner's derivative works. If the derivative work fails to protect the original material upon which it is based, an infringer could escape liability by proving a lack of access to the original material. This result would contravene the purpose of 17 U.S.C. § 106(2), which encourages the creation of derivative works by the owners of the original material by granting the owners of original works the exclusive right to creative derivatives therefrom.

*Richmond Homes Management, Inc. v. Raintree, Inc.*, 862 F. Supp. 1517, 1525–26 (W.D. Va. 1994) (some citations omitted), *rev'd in part on other grounds,* 66 F.3d 316 (4th Cir. 1995). *Accord Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 539 (4th Cir. 2007) (holding that the plaintiff was entitled to sue for infringement of its entire architectural design, even though that design included components of an earlier work also created by the plaintiff but which was never registered, since the plaintiff was "the author and therefore owner of the copyright in all of the copyrightable design elements").

Betz's copyrights in both the Holland and Ethridge as architectural works are presumptively valid; Defendants have not overcome that presumption. Under the AWCPA, the copyrights in those works may be infringed by drawings and blueprints, or by actual buildings, regardless of when the works of which

they are derivatives were first published.

        *d.*        *Betz's Designs Are Not Insufficiently Detailed to Warrant Copyright Protection*

As for Defendants' argument that Betz's materials and designs are not sufficiently detailed to warrant copyright protection, Betz has presented evidence that any skilled draftsman could convert the plans revealed in Betz's marketing materials into working drawings from which a house could be built, and JOC has not presented any evidence to refute that statement. From that point, the question of whether the houses built by JOC are substantially similar to Betz's copyrighted designs (as discussed below) is a disputed question of fact. The Court rejects JOC's argument that "the test for locating the boundary between idea and expression of idea for an architectural work depicted in drawings should be whether the drawings fully reveal the complete design and do not leave opportunities for, or require, the builder to make choices in completing the construction of a building," as unsupported by the law in this area. Certainly, the lack of specificity in a design will play into the substantial similarity analysis, but does not necessarily render the design *per se* unprotectable by copyright.

        *e.*        *The Effect of the Length of Time Between Publication and Registration on Copyright Validity*

Finally, Defendants argue that the presumption of validity is rebutted by the length of time between first publication and copyright registration, which for several of the Betz Designs falls between five and a half and almost ten years and, in one case, more than twelve years. While it is true that a certificate of registration obtained after five years eliminates the *presumption* of validity, the "evidentiary weight to be accorded the certificate of registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c). Here, irrespective of the weight accorded to the Certificates of Registration, the fact remains that Betz has proffered evidence in addition to the Certificates that it independently created each of the designs at issue. Again, Defendants have not presented any evidence that would create a disputed issue of material fact as to that question.

In sum, it is well established under Sixth Circuit precedent that both the originality and the non-functionality of a copyrighted work are presumptively established by copyright registration. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 552, 534 (6th Cir. 2004). For most of Betz's copyrighted works, Defendants have pointed to nothing in the record to rebut that presumption. To the extent Defendants have succeeded in rebutting the presumption for some of the Betz Designs based upon the

length of time between publication and copyright registration, Betz has come forward with evidence of each work's independent creation, which Defendants have not refuted. Because Defendants have not presented any evidence refuting the facts stated in the Certificates of Registration or to show that Betz did not actually create the designs at issue, the Court concludes that Betz is entitled to summary judgment in its favor on the question of whether Betz owns valid copyrights in the Betz Designs with respect to which it makes infringement claims against Defendants.

### 2. Whether Defendants Had "Access" to the Betz Designs

The term "access" is defined broadly in the copyright-infringement context as "having a reasonable opportunity to [view] the plaintiff['s] work and thus having the opportunity to copy." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (brackets in original) (citations omitted). The Sixth Circuit concluded in *Robert R. Jones Associates, Inc. v. Nino Homes*, 858 F.2d 274, 277 n.2 (6th Cir. 1988), that the defendant had "access" to protected architectural plans simply because it built houses within three miles of the plaintiff's homes. The Eastern District of Michigan found "access" where the plaintiffs' model home was open to the public and was barely two miles away from the defendant's allegedly infringing houses, and the plaintiffs had distributed sales brochures containing their copyrighted designs within the town in which the houses were built. The court concluded that plaintiffs had "established the likely existence of access despite the affidavit of [defendant] stating that he never viewed [plaintiffs'] plans." *Ronald Mayotte & Assocs. v. MGC Bldg. Co.*, 885 F. Supp. 148, 152 (E.D. Mich. 1994).

Defendants also argue that "[e]veryone agrees that no one can build a house from the Plaintiff's marketing drawings," so, they claim, the operative question is whether Defendants had access to Betz's construction drawings—of which there is no proof. (Doc. No. 177, at 7.) Defendants' position is legally untenable: It is clear, as Betz points out, that "[f]or copyright purposes, it does not matter that the infringer copied from a depiction of the copyrighted floor plan rather than the technical blueprint drawings filed with the Copyright Office." *Lajoie v. Pavcon, Inc.*, 146 F. Supp. 2d 1240, 1245 (M.D. Fla. 2000). "[W]hen a defendant uses a plaintiff's abbreviated drawings from promotional literature to prepare derivative works, *i.e.*, more detailed plans, and to construct a home from these plans, it can constitute infringement." *Lindal Cedar Homes, Inc. v. Ireland*, No. Civ.03-6102-TC, 2004 WL 2066742, at *3 (D.

Ore. Sept. 14, 2004) (citations omitted); *see also Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 904 (11th Cir. 1986) (affirming a finding of copying based on access to newspaper advertisements and sales brochures, but not blueprints). In other words, the fact that Defendants did not have access to actual blueprints of Betz's designs is simply immaterial.

C&H further argues that Betz has not set forth any evidence establishing which defendant allegedly infringed which designs, nor has Betz attempted to distinguish among the various Defendants for purposes of proving access. While that argument may have bearing on the apportionment of damages, if any are awarded, it cannot prevent the conclusion that all Defendants had "access" to Betz's designs, given that Defendant Mark Clark is indisputably an agent for both C&H and JOC.[6]

Finally, Defendants argue that Betz apparently "believe[s] it can satisfy the access requirement by proving that it promotes itself to the Nth degree, and therefore, everyone in the home construction industry must know about every one of its approximately 1400 house designs." (Doc. No. 177, at 7.) The question, of course, is not whether Defendants "knew" about each of Betz's designs but whether they had access to them. Whether the Court agrees with the law or not, it nonetheless appears fairly well established that all a plaintiff has to do to prove "access" is to show that the plaintiff distributes its marketing materials far and wide such that virtually everyone has access to them. This element of the plaintiff's *prima facie* case of copyright infringement is intended to be easily established in light of the inherent difficulty of proving actual copying.

In sum, there is no dispute here that both Mark Clark and Ken Howell knew about Betz and its home designs by 2002 and 2001 respectively. They knew about the website and had subscriptions to "Builder" magazine and therefore also received Betz's "Homeplans" magazine, in which the Betz Designs were published. Under the law of this Circuit, the Court concludes that access on the part of all three Defendants is established by virtue of these facts, despite Mr. Clark's and Mr. Howell's testimony that they never actually looked at the Homeplans magazines.

---

[6] Defendants also attempt to argue that "most of the designs for which JOC is being sued came from Chris Turner." (Doc. No. 177, at 7.) Defendants have not presented evidence of that fact in a form in which it can be considered in the context of *the plaintiff's* motion for summary judgment—*i.e.*, by filing its own statement of material facts as to which it contends there is a dispute. *See* Local Rule 56.01. Moreover, the fact that Defendants obtained access to Betz's designs through some medium other than Betz's own publications does not tend to establish that Defendants did not have access to the designs, whether from Betz's publications or elsewhere.

### 3.     The Question of Substantial Similarity

Pursuant to the Local Rules of this Court:

> In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the *Federal Rules of Civil Procedure* shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by specific citation to the record.

L.R. 56.01(c).

In the present case, Betz did not include any facts relating to the similarity between its designs and those of Defendants in its Statement of Undisputed Material Facts; it does not even set forth in its Statement which copyrighted Betz designs it believes have been infringed by which of Defendants' designs or actual houses. Nor has Betz proffered any fact-based discussion of the issue of substantial similarity in its memorandum in support of summary judgment. Instead, it refers to the attachments to the Declaration of Eric Taylor which it describes as "allow[ing] for side-by-side comparisons of all the plans for which Betz is seeking summary judgment on the issue of copyright infringement." (Doc. No. 162, at 12.) According to Betz, "[e]ach of the plan comparisons used in this exhibit is marked with the source document from which that plan was pulled for use in the demonstrative exhibit. Each source document identifying an allegedly infringing plan used by the Clark Defendants has been authenticated by Mark Clark in his deposition testimony." (*Id.*) Betz did not provide citations to Mark Clark's deposition where he purportedly authenticated the documents in question, and no further description of the attachments is provided. In fact, the sum total of Betz's argument in support of summary judgment on the issue of substantial similarity, aside from its reference to case law on that topic, is as follows:

> Betz submits that, given the background facts, including the admitted access to Betz's copyrighted designs and the lack of any evidence of independent creation, and the strong similarities between the works in question, the Court should rule as a matter of law that the Clark Defendants' plans are substantially similar to and copied from the corresponding Betz plans in this suit.

(Doc. No. 162, at 12, 13.)

The Court finds that Betz's documentation is insufficient to support summary judgment. First, proof in copyright cases is frequently fact-intensive and highly circumstantial, involving factual comparison between works to determine whether they are substantially similar for purposes of proving copyright infringement. Because of the inherent subjectivity involved in that inquiry, several courts have observed

that summary judgment on the question of substantial similarity is rarely appropriate. *See, e.g., Beal v. Paramount Pictures, Corp.*, 20 F.3d 454, 459 (11th Cir. 1994) (citing *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980)). Second, while the present case certainly calls for fact-intensive comparison between various works, Betz has compounded the inherent subjectivity problems through its failure adequately to state what it believes the facts show, to provide a format in which Defendants could respond to those facts, or even to outline for the Court the findings it wants the Court to make. Further, as Defendants argue, Betz has made no attempt to identify which portions of its designs are protectable and which are not. Summary judgment on the issue of substantial similarity will therefore be denied.

### 4. Mark Clark's Individual Liability

Because the Court has not reached a finding that any defendant is ultimately liable for copyright infringement in this case, it is premature to reach a decision as to whether Mark Clark himself will be either vicariously or directly liable for copyright infringement. Summary judgment on that issue will therefore be denied.

### 5. Whether the Affirmative Defenses Raised by Defendants' Answers Are Subject to Dismissal as a Matter of Law

Defendants raise several affirmative defenses in their Answers, including statute of limitations, laches, estoppel, failure to satisfy conditions precedent, unclean hands, good faith, failure to mitigate, license, accord and satisfaction, and "independent, intervening and superseding causes." (Doc. Nos. 119, 120.) Although the burden of proving these affirmative defenses rests squarely upon Defendants' shoulders, Betz has come forward with evidence sufficient to refute most of them. For the reasons set forth below, the Court finds that Betz is entitled to summary judgment in its favor as to all of the affirmative defenses enumerated above, except that of the failure to mitigate damages.

#### a. Statute of Limitations Defense

The Copyright Act contains its own explicit statute of limitations: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The parties dispute the appropriate interpretation of the term "accrued" as used in this provision. Defendants Mark Clark and JOC (collectively referred to in this section as "JOC")

insist that a claim for copyright infringement "accrues" as of the date the plaintiff suffers an injury.[7]  Betz argues that a claim accrues when the plaintiff discovers or reasonably should have discovered the infringement.  If Betz is correct, there is no doubt that its claims are timely, because the very earliest date upon which Betz might have been put on notice of its claims is February 2006, when Betz learned that some of Chris Turner's allegedly infringing plans had been "sold" to JOC.  Betz filed suit in early 2008, well within three years of that discovery.[8]

In support of its position regarding when Betz's claims accrued, JOC argues that this Court should adopt the "injury rule" rather than the "discovery rule" for purposes of determining whether a copyright claim falls within the three-year statute of limitations, "in light of the legislative history of the Copyright Act" and Supreme Court precedent.  (Doc. No. 52, at 3 (citing *TRW v. Andrews*, 534 U.S. 19 (2001) (holding that the Ninth Circuit had erred in applying a general discovery rule in the context of a claim under the Fair Credit Reporting Act, particularly given the FCRA's express limitation of the discovery rule at 15 U.S.C. § 1681p).)  JOC acknowledges that the Supreme Court has not spoken to the issue of when a copyright claim accrues, and further concedes that the Sixth Circuit has expressly stated that the discovery rule applies to copyright infringement claims.  It argues, however, that the Sixth Circuit has not closely analyzed the issue and that, in the cases in which it stated it was applying the discovery rule, closer reading of the opinions reveals that the court actually applied the injury rule.  (*See* Doc. No. 52, at 5–8 (citing *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383 (6th Cir. 2007); *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615 (6th Cir. 2004); *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883 (6th Cir. 2004); *Ritchie v. William*s, 395 F.3d 283 (6th Cir. 2005); *Hoste v. Radio Corp. of Am.*, 654 F.2d 11 (6th Cir. 1981).)

---

[7] Defendant C&H did not address the statute-of-limitations defense at all, except to incorporate by reference JOC's arguments.  JOC did not address Betz's affirmative-defenses argument at all in its response to Betz's motion, not even by cross-reference.  Instead—and improperly, in light of the differing burdens of proof—it addressed the statute of limitations and laches defenses in its memorandum in support of its own motion for summary judgment.  Even there, JOC did not actually brief the statute of limitations issue.  Instead, it incorporated by reference a motion and memorandum filed in connection with a discovery dispute before Magistrate Judge Griffin in June 2008 in which it raised a statute-of-limitations argument in support of a protective order.  (See Doc. No.167, at 18 (cross-referencing Doc. Nos. 51, 52).)  The Court finds this kind of incorporation by reference inappropriate in the context of a motion for summary judgment but will nonetheless consider the Defendants' arguments.

[8] Betz asserts it was not put on notice of the possibility of actual infringement by Defendants until sometime in 2007.

This Court disagrees. Three of the referenced cases specifically acknowledge that a copyright claim accrues when a "plaintiff knows of the infringement or is chargeable with such knowledge." *Roger Miller Music*, 477 F.3d at 390; *Bridgeport Music v. Diamond Time*, 371 F.3d at 889; *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d at 621. In both *Roger Miller Music* and *Rhyme Syndicate*, the plaintiff had actual knowledge of infringement well in excess of three years before filing suit. Because of the principle that each infringing act gives rise to damages, the court in each case had to consider whether any continuing acts of infringement had occurred within the three-year limitations period. The *Diamond Time* case, while acknowledging that discovery of infringement triggers accrual, did not actually address the question of when discovery had occurred in that case. However, it is implicit in the decision that the plaintiff was chargeable with notice of infringement more than three years before suit was filed, so again the question was whether further acts of infringement by the defendants had occurred within three years of the date suit was filed. In *Ritchie v. Williams*, the court did not even cite to the actual statute of limitations in the Copyright Act, but it clearly applied the discovery rule to conclude that the plaintiff's claims were barred: "The December 1990 letter triggered the running of the federal copyright three-year statute of limitations for copyright infringement claims. Because the defendants waited ten years [after receiving the letter] to file suit on these claims, they are clearly barred by the statute of limitations." *Ritchie*, 395 F.3d at 288–89 (footnote omitted). Finally, in *Hoste*, the court employed somewhat loose language in holding that "the Copyright Act provides a three year statute of limitations which bars recovery of any claims of plaintiff for damages which accrued prior to March 9, 1975," since suit was not filed until March 9, 1978. *Hoste*, 654 F.2d at 11. However, that statement was made in the context of facts showing that the plaintiff had first heard the allegedly infringing song on the radio in 1965, thirteen years before she got around to filing suit. The plaintiff was therefore permitted to seek damages only for infringing acts that had occurred within three years of the date suit was filed. *Id.*

In sum, regardless of whether the Sixth Circuit has performed any in-depth analysis as to the wisdom of applying the discovery rule as opposed to the injury rule, there is simply no doubt that the Sixth Circuit has repeatedly and unambiguously held that the discovery rule applies to the Copyright Act's statute of limitations. The Court is bound by those holdings. Betz is entitled to summary judgment in its favor disposing of Defendants' statute of limitations defense. For the same reason, JOC's motion for

judgment in its favor based on the statute of limitations will be denied.

> b.    Laches Defense

The Sixth Circuit characterizes laches as "a negligent and unintentional failure to protect one's rights." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). The defense of laches requires proof of two elements: (1) lack of diligence by the party against whom the defense is asserted; and (2) prejudice to the party asserting it. *Chirco v. Crosswinds Cmties., Inc.*, 474 F.3dd 227 (6th Cir. 2007). The circuit courts are split with regard to whether a laches defense can prevail when a claim is brought within a clearly prescribed statute of limitations. In *Chirco*, the Sixth Circuit noted that it had "carved out a middle ground" between the Fourth Circuit's absolute "prohibition on application of the laches doctrine in cases involving a statute with an explicit limitations provision" and the Ninth Circuit's "somewhat more expansive application of the doctrine." *Id.* at 232–33. More specifically, there is a strong presumption in the Sixth Circuit that a case brought within the statute of limitations is not barred by laches, and such presumption is only rebuttable by a showing of "compelling reasons." *Id.* at 233 (collecting cases). Thus, while the Sixth Circuit has recognized that the equitable doctrine of laches *can* be applied in copyright infringement cases, it has "sought to restrict such use to the most compelling of cases." *Id.*

The facts presented here are simply not sufficiently "compelling" to warrant the application of laches. Defendants hint at prejudice but have not produced affidavits or presented a timeline showing how they may have been prejudiced by any delay in filing suit after Betz was put on notice of alleged copyright violations. Such evidence might be in the record, but the parties have not brought it to the Court's attention. More to the point, while JOC asserts broadly that Betz was put on notice of Chris Turner's copyright infringement in 2003, it has not shown how Betz was negligent in failing to connect Turner's copyright infringement to the Defendants' alleged copyright infringement sooner than it did.

In short, JOC carries the burden of proving its affirmative defense and it has not presented evidence to support a defense of laches. Betz's motion for summary judgment dismissing Defendants' laches defense will be granted, and JOC's motion for judgment in Defendants' favor on the basis of laches will be denied.

> c.    Failure to Mitigate Damages

Generally speaking, an injured party has a duty to mitigate damages by exercising "reasonable care and due diligence to avoid loss or to minimize damages after suffering injury." *JWT, L.P. v. Printers Press, Inc.*, No. M2001-02590-COA-R3-CV, 2002 WL 31397317, at *5 (Tenn. Ct. App. Oct. 24, 2002) (citing, among others, *Cook & Nichols, Inc. v. Peat, Marwick, Mitchell & Co.*, 480 S.W.2d 542, 545 (Tenn. Ct. App. 1971)). The applicable standard is one of reasonable care, and the injured party is not required to mitigate damages if such action is unduly burdensome or impossible. *Cummins v. Brodie*, 667 S.W.2d 759 (Tenn. Ct. App. 1983). In determining whether an injured party has fulfilled its duty to mitigate, a court must examine "whether the method which he employed to avoid consequential injury was reasonable under the circumstances existing at the time." *Action Ads, Inc. v. William B. Tanner Co., Inc.*, 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979) (quoting *Tampa Electric Co. v. Nashville Coal Co.*, 214 F. Supp. 647, 652 (M.D. Tenn. 1963)). Despite this duty, an injured party is not required to mitigate damages where such a duty would constitute an undue burden. *Cummins*, 667 S.W.2d at 766.

Mitigation of damages is the only defense C&H specifically defends in its response to the plaintiff's motion for summary judgment. In support of that defense, C&H asserts simply that (1) C&H was formed on January 1, 2007; (2) Betz learned in February 2006 that Chris Turner had done business with a number of home builders in and around Murfreesboro, including JOC; (3) Betz never made any attempt to contact or notify C&H, either through Mark Clark or Ken Howell, that Ken Howell and/or JOC may have obtained infringing plans from Chris Turner; and (4) Ken Howell testified in a deposition given in the present case that he began purchasing plans from Turner in 2004 and licensed a number of plans from Turner in February 2006. Although C&H makes no attempt to connect the dots, the Court presumes that C&H intends to imply, through these factual assertions, that it has been prejudiced by Betz's failure to notify JOC, Mark Clark or Ken Howell that they may have purchased infringing plans, and that had they done so, Betz might have prevented Defendants from continuing to use any infringing house plans after February 2006.

There are no facts before this Court to indicate when or in what amount Betz might have suffered damages arising from infringing acts that continued after early 2006, but the Court finds that the question of whether Betz might have mitigated its damages remains a jury question. Betz's motion for summary judgment as to that single defense will therefore be denied.

*d.* *Other Defenses*

As Betz points out, when a party moves for summary judgment on an issue as to which it does not bear the burden of proof, that party "may meet its initial burden by showing 'that there is an absence of evidence to support the nonmoving party's case.'" *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party carries that burden, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Id.*

Here, Betz seeks summary judgment on additional affirmative defenses raised by Defendants, including, as set forth above, estoppel, failure to satisfy conditions precedent, unclean hands, good faith, license, accord and satisfaction, and "independent, intervening and superseding causes." Betz has come forward with evidence, in the form of Eric Taylor's Declaration, in which Taylor avers that he is not aware of the existence of any evidence that would support any of Defendants' affirmative defenses. (Taylor Decl., Doc. No. 155, at ¶ 15.) Defendants have not even addressed Betz's argument insofar as it relates to these other affirmative defenses, much less shown that a genuine factual dispute exists concerning these defenses. Betz's motion for summary judgment as to these affirmative defenses will therefore be granted.

### D. Conclusion—Betz's Motion for Summary Judgment

For the reasons set forth herein, Plaintiff's Motion for Partial Summary Judgment will be granted in part and denied in part. The motion will be denied as to the issues of substantial similarity, the liability of Mark Clark, and the affirmative defense of failure to mitigate damages. In all other respects the motion will be granted.

## II. JOC AND MARK CLARK'S MOTION FOR SUMMARY JUDGMENT

Defendants JOC and Mark Clark (collectively referred to in this section as "JOC") seek summary judgment in their favor on three issues, any one of which is potentially dispositive of the plaintiff's claims: (1) whether the Betz copyrights are valid; (2) whether JOC infringed the Betz copyrights; and (3) whether the Betz copyrights are unenforceable as a result of JOC's laches and statute-of-limitations defenses. The first and third of these contentions have already been resolved in favor of Betz in the context of the Court's consideration of Betz's motion, which required the Court to view the relevant facts in the light

most favorable to Betz. The Court will deny JOC's motion for summary judgment as to those issues without reconsidering them here. As for the remaining issue, whether JOC infringed Betz's copyrights, the Court finds that disputed facts preclude summary judgment in favor of either party.[9]

A. **Whether JOC Has Established that No Copying Occurred**

The Court denied summary judgment to Betz on the question of substantial similarity and did not reach the question of whether intentional copying occurred. JOC attempts, in its own motion, to argue that it is entitled to summary judgment in its favor on the ground that no copying occurred. In support of this position, it argues that for "most of the houses at issue" in this case, the home designs "came from either Creative Home Designs or from Christopher Turner," and that "[t]here is no evidence that JOC asked either of these home plan sources to copy a Betz design." (Doc. No. 167, at 16.) JOC, however, has not presented any evidence to this Court regarding the source of its designs. More to the point, even if JOC is able to prove it did not intentionally build houses from infringing designs, it may still be liable for copyright infringement. *See, e.g.*, *Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, No. 2:05-cv-711-ENV-ETB, 2007 WL 708798, at *6 (E.D.N.Y. March 6, 2007) (holding that liability under the Copyright Act extends to builders as well as to those who draw up blueprints that infringe a copyrighted design, even if the builders did not know the designs were pirated); 4 Nimmer on Copyright § 13.08 (2006) ("Then there is the situation where the defendant's work is based upon a work furnished by a third party. The defendant's ignorance that such third party has wrongfully copied from the plaintiff will not immunize him from liability."). Moreover, as JOC recognizes, copying can be proved by establishing access and substantial similarity. Access has been established. The question of substantial similarity remains an open question regarding which neither party is entitled to summary judgment.

For the reasons set forth above, JOC's motion for summary judgment will be denied.

---

[9] JOC provided a Statement of Undisputed Material Facts in support of its motion for summary judgment. The Court observes that Plaintiff's responses to the Defendants' Statements of Undisputed Material Facts are improperly formatted and out of compliance with L.R. 56(c) insofar as they do not "reproduce[ ] the facts and citations verbatim as set forth by the movant." This failure created an unnecessary burden on this Court to cross reference the plaintiff's and defendants' documents. The Court would have required the plaintiff to resubmit its response to the defendants' statement, correcting this oversight, but for the Court's conclusion that doing so would have been a waste of effort. JOC's Statement of Undisputed Material Facts is made up almost entirely of "facts" that are either clearly disputed or immaterial, or that are actually opinions couched as facts.

III.   **C&H'S MOTION FOR SUMMARY JUDGMENT**

To the extent C&H joins JOC's motion, its motion is denied for the same reasons set forth in the discussion of JOC's motion.

C&H raises one additional argument not addressed in JOC's or Betz's motion:  It asserts that it is entitled to judgment in its favor on the issue of damages related to its profits from the allegedly infringing houses.  More specifically, it asserts that Betz cannot prove it is entitled to disgorgement of C&H's profits, because no such profits exist.

Under the Copyright Act, a copyright owner is entitled to recover the actual damages suffered as a result of an infringement, as well as any profits of the infringer that are attributable to the infringement that are not taken into account in computing actual damages.  17 U.S.C. § 504(b).  In establishing an infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer must prove his deductible expenses and the elements of profit attributable to something other than the copyright infringement.  *Id.*

Without addressing the issue of actual damages, C&H asserts that, for seventeen of C&H's homes alleged to have infringed Betz's copyrights, C&H lost money instead of realizing any profit, even without allocating any amount to general overhead, citing the Affidavit of Mark Clark and Profit and Loss Statements for the houses in question, attached as a collective exhibit to Clark's affidavit.  In the Affidavit, Clark avers that these Profit and Loss Statements were "created at or near the time of the construction and sale of the homes; were kept in the normal course of regularly conducted business activity; and were created pursuant to regularly conducted activity as a regular practice."  (2/12/2010 Aff. of M. Clark , Doc. No. 173-1, at ¶ 2, and Ex. A, Doc. Nos. 173-2 through 173-4.)  The Profit and Loss Statements appear to be summaries of costs and income associated with each of the various homes and purport to show a loss associated with each home.

The need for Defendants' reliance on the Profit and Loss Statements is established by a prior Affidavit submitted during the case-management phase of this case, in which Mr. Clark averred that a tornado struck the building in which the offices of both C&H and JOC were housed on April 10, 2009, destroying a portion of the building and destroying all paper files and records maintained in those offices. The companies' accountants maintained a duplicate set of computerized financial information for the

companies, generally current through the end of 2008, but no other documentation is available, including the financial files for the individual houses built. (11/12/2009 Aff. of M. Clark, Doc. No. 132, at ¶ 3.)

In response to C&H's motion, Betz insists that summary judgment on this issue is not appropriate, because the evidence introduced by C&H is inadmissible insofar as the defendant has not made available the documentation corroborating the fact or the amount of the expenses underlying the cost report summaries, citing Rule 1006 of the Federal Rules of Evidence. Betz further maintains that there are disputed questions of fact that preclude summary judgment on the issue of profits because there is evidence in the record (a) that Mark Clark is not competent to testify about profits and losses associated with the houses in question; and (b) Ken Howell testified that the houses built by C&H typically earned a profit and that Mark Clark had a history of inflating his cost figures to hide profits.

In rebuttal, C&H cites Rule 1004 of the Federal Rules in Evidence, which states in pertinent part:

> The original is not required, and other evidence of the contents of a writing, recording or photograph is admissible if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.

Fed. R. Evid. 1004(1). On the basis of this rule, and in light of the undisputed fact that many of the Defendants' documents were destroyed in the April 2009 tornado, C&H insists that the Profit and Loss Statements attached to Mark Clark's affidavit will be admissible as "other evidence" despite the loss of the underlying supporting documentation.

The Court finds that the issue presented is in the nature of a motion in limine that may or may not have been discussed in full before Magistrate Judge Griffin, but which has not been fully briefed to this Court. From Mr. Clark's testimony, it appears undisputed that certain original documents have been lost or destroyed through no fault of the Defendants and that under Rule 1004(1) "other evidence" of the contents of the destroyed documents will be admissible at trial. However, the Court also finds that, for purposes of summary judgment, Mark Clark has not adequately indicated where or how he obtained the information contained in the profit and loss statements in light of his testimony that he himself is not competent to testify regarding profits and losses, and in light of the fact that his averment that the profit and loss statements were "created at or near the time of the construction and sale of the homes; [and] were kept in the normal course of regularly conducted business activity" (Doc. No. 173-1, at ¶ 2), is apparently contradicted by his testimony that every document in his offices was destroyed by the 2009

tornado. Moreover, in yet another Affidavit, Mr. Clark averred that Defendants would rely upon additional documents to support their claims for deduction of costs and expenses, including Settlement Statements, Buyer/Seller Certifications, Tax Returns, forms, schedules and other attendant documents. (Doc. No. 151, 2/1/2010 Aff. of M. Clark, at ¶ 6.) In other words, there may be additional probative documentation that supports the Defendants' position which has not been submitted in the context of the present motions but which should probably be made available to a jury—or at the very least made available to the Court in the context of supporting or opposing a motion in limine.

C&H's motion for summary judgment, like JOC's, will be denied.

## IV. CONCLUSION

In sum, Defendants' motions will both be denied in their entirety. Plaintiff Betz's motion for partial summary judgment will be granted in part and denied in part. An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge