IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRANK BETZ ASSOCIATES, INC., ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> J.O. CLARK CONSTRUCTION, L.L.C., ) <br> MARK CLARK and CLARK & HOWELL ) <br> BUILDING GROUP, LLC, ) <br> ) <br>     Defendants, ) <br> ) <br> and ) <br> ) <br> CLARK & HOWELL BUILDING GROUP, LLC, ) <br> ) <br>     Defendant/Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KEN HOWELL, ) <br> ) <br>     Third-Party Defendant. ) | Civil Action No. 3:08-cv-159 <br><br> Judge Thomas A. Wiseman, Jr. <br><br> Magistrate Judge Juliet E. Griffin |

## ORDER

Before the Court is the Motion to Separate Trial (Doc. No. 224) filed by Defendants J.O. Clark Construction, Mark Clark, and Clark & Howell Building Group. Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, Defendants seek an order from this Court separating the trial in this matter into three separate sections or phases, the first of which would be a bench trial to "determin[e] legal questions of copyright protection scope," and the remaining two of which would be before a single jury which would first "resolv[e] issues of fact on copyright infringement liability" and then "determin[e] the amount of damages," if any. (Doc. No. 224, at 2.) Plaintiff Frank Betz Associates, Inc. opposes the motion.

### *Legal Standard*

Pursuant to Rule 42(b), the Court has the discretion to order a separate trial of one or more separate issues or claims, whenever doing so would be in furtherance of convenience or would avoid prejudice, expedite resolution of the case, or economize judicial or party resources. The principal purpose of Rule 42(b) "is to enable the trial judge to dispose of a case in a way that advances judicial efficiency and is fair to the parties." *In re Bendectin Litigation*, 857 F.2d 290, 307 (6th Cir. 1988).

However, "[i]t is the interest of efficient judicial administration that is to be controlling, rather than the wishes of the parties." *Id.* "In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *Id.*

As stated by Wright and Miller, however, "[t]he piecemeal trial of separate issues in a single lawsuit . . . is not to be the usual course. Thus, Rule 42(b) should be resorted to only as the result of the exercise of informed discretion when the district judge believes that separation will achieve the purposes of the separate trial rule." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2388 (3d ed. 2008) (footnotes omitted). Moreover,

> [i]f a single issue could be dispositive of the case or is likely to lead the parties to negotiate a settlement, and resolution of it might make it unnecessary to try the other issues in the litigation, separate trial of that issue may be desirable to save the time of the court and reduce the expenses of the parties. If, however, the preliminary and separate trial of an issue will involve extensive proof and substantially the same facts or witnesses as the other issues in the cases, or if any saving in time and expense is wholly speculative, it is likely that a separate trial on that issue will be denied by the district judge. . . .

*Id.* (footnotes omitted).

### *Analysis*

Defendants here argue that legal issues remain to be resolved by the Court, and that separation and resolution of those issues, before submitting the factual issues to be resolved to a jury, would minimize the possibility of prejudice and confusing the jury. Specifically, while acknowledging that the Court has granted summary judgment in favor of Plaintiff on the question of its ownership of valid copyrights on the works in question, Defendants argue that the issue of whether they may be liable for copying protected works requires the Court to identify, as a matter of law, what portions of the Plaintiff's works are actually entitled to copyright protection. That is, citing case law that by and large does not concern architectural-work copyrights, Defendants contend that the Court "must look at the various elements and features in each of Plaintiff's designs to determine whether each element or feature is subject to copyright protection. The Court must filter out the unprotected elements of the designs so that the jury does not consider those elements in comparing the Betz designs to the respective Defendants' designs. Removing the unprotected elements will prevent potential jury confusion." (Doc. No. 225, at 6.) Defendants also point out that Judge Nixon, in a similar case involving the same plaintiff but different

defendants, recently granted a similar motion to trifurcate filed by defendants there. *See Frank Betz Assocs. v. Signature Homes, Inc.* ("*Signature Homes*"), Case No. 3:06-cv-0911, Order entered 7/17/09 (Doc. No. 180), as amended by Clarification Order entered 8/7/09 (Doc. No. 213).

This Court is familiar with the proceedings and rulings in *Signature Homes* and is persuaded, despite Judge Nixon's conclusion to the contrary, that trifurcation in this instance would be a colossal waste of judicial and party time and resources. Several months after conducting a two-day bench trial for the purpose of ruling as a matter of law on the "functionality" of the plaintiff's home designs in that case, at which various experts among other witnesses testified, Judge Nixon entered a Memorandum and Order granting judgment in favor of the plaintiff on that issue, ruling in pertinent part as follows:

> Plaintiff has shown that although the component parts of a house, as captured in a house plan, perform certain functions, the overall design and arrangement of those component parts is not functionally required. Defendant's expert witness . . . conceded that the only things required for a house to function as a house are four walls, a roof, and an entrance/exit. [Defendant's expert] further explained that a designer's choices as to the internal arrangement of a house plan are not functionally required. Plaintiff's expert witness agreed that although elements of the Betz designs were functional, each design's particular arrangement was not functionally required. Just as someone using a kaleidoscope mixes standard colors into a new pattern, there are certain common features that go into a house design—a kitchen, bathroom, bedrooms—and the designer mores each of those elements into an original, potentially protectible arrangement.
>
> While both experts agree that some outside constraints, including market demands, dictate aspects of home design plans, the Court does not find that these external considerations undermine protection for the plans as a whole. There is no standard for house plans. Building codes constrain the ultimate design of a house, and while zoning or historic preservation ordinances may affect the exterior design, they do not dictate the interior arrangement of rooms. . . . The number of bedrooms for any design may be limited, to some extent, by square footage and, likewise, the width and depth of the lot may influence design. However, courts routinely protect modern architectural structures and plans, including commercial homes, possessing the minimal amount of originality required by copyright. And the fact that the creator of a house plan factored marketability into the design renders the design no less worthy of protection than a pop song designed for mass appeal.
>
> . . . . The sheer number of Betz designs at issue and the number of designs cited by the experts in their testimony point to the various ways that even the features shared by these designs—such as number of bedrooms—may be arranged in original ways. These designs display the minimum amount of originality necessary for protection under the Copyright Act. Although comprised of functional elements, the Betz designs do not rise to the level of functionality such that copyright protection cannot be extended to them.

*Signature Homes*, Case No. 3:06-cv-0911, Mem. & Order entered 3/29/10 (Doc. No. 228), at 6–8. On the basis of this analysis, the court entered judgment for Betz on the issue of the "functionality" of the Betz plans.

This Court has no need to conduct a two-day bench trial to reach the same conclusions. The fact that Judge Nixon was persuaded that such a trial was required simply reflects the confusion in the case law regarding the application of copyright protection to architectural works. Generally speaking, to prevail on a copyright claim, a plaintiff must prove (1) ownership of a valid copyright and (2) that the defendant copied original or protectable[1] aspects of the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348, 361 (1991). To make the showing required for the second step of that inquiry, "[t]he plaintiff must show not only that the defendant actually copied the plaintiff's work, but also that the defendant's work is 'substantially similar' to protectible elements of the plaintiff's work." *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002) (citations omitted).

The Sixth Circuit has expressly adopted a two-part test for determining the existence of "substantial similarity." *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003). "[T]he first step 'requires identifying which aspects of the artist's work, if any, are protectible by copyright'; the second 'involves determining whether the allegedly infringing work is "substantially similar" to protectible elements of the artist's work.'" *Id.* (quoting *Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C. Cir. 2002)). This step is intended to be a legal inquiry, pursuant to which the courts "filter out the unoriginal, unprotectible elements—elements that were not independently created by the inventor, and that possess no minimal degree of creativity—through a variety of analyses." *Id.* (citing *Feist*, 499 U.S. at 345). The distinction between functional and creative aspects of an architectural work is also embraced by the Architectural Works Copyright Protection Act ("AWCPA"). The AWCPA protects "architectural works," defined as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101; *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). However, although standard features incorporated into an architectural work are not protected *per se*,

---

[1] As best this Court can ascertain, both "protectable" and "protectible" are acceptable spellings of this words, and both forms are used interchangeably in court rulings. It is unclear whether there is a preferred spelling. In the interest of consistency, this Court employs the former spelling except when quoting directly from opinions using the latter spelling.

"the creator's independent selection and arrangement of component parts into an overall, original design" generally will be protected. 1-2 *Nimmer on Copyright* § 2.20 (internal citation omitted). The AWCPA does not actually define "standard features," but courts have presumed this statement to mean purely functional standard features such as doors, windows, fireplaces, the use of red brick on the exterior and so forth, are elements that would not be protectable.[2]

As a practical matter, courts have had difficulty applying the prescribed two-step "substantial similarity" inquiry in the context of architectural-work copyright infringement cases. Generally speaking, even when they *say* they are applying the two-step process, courts have not succeeded in actually separating the steps.[3] For example, in *Sturdza v. United Arab Emirates*, the D.C. Circuit duly noted that the substantial similarity inquiry consists of two steps, the first of which requires "identifying which aspects of the artist's work, if any, are protectible by copyright." 281 F.3d at 1295. "Once unprotectible elements

---

[2] Courts have also concluded that "*scènes à faire*" are a type of standard feature that is not protectable by copyright. Outside the architectural context, *scènes à faire* are defined as "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Atari, Inc. v. N. Am. Phillips Consumer Elecs. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (internal quotation marks and citation omitted). Examples of this type of factor include "[f]oot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop" which, being "venerable and oft-recurring themes of police fiction[,] . . . are not copyrightable." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986). In addition, elements that are "dictated by external factors such as particular business practices," *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 401 (5th Cir. 2000), are likewise excluded from protection.

[3] The Sixth Circuit applied the two-step test in *Tiseo Architects, Inc. v. B & B Pools Service & Supply Co.*, 495 F.3d 344 (6th Cir. 2007), but with minimal analysis. In that case, the plaintiff architecture firm alleged that another architect had copied a design and site plan drawings that the plaintiff had prepared for the defendant's office building renovation and expansion. After conducting a bench trial, the district court entered judgment for the defendant, finding no substantial similarity, and the plaintiff appealed. In its oral opinion, the district court observed that the two designs were "very, very similar . . . you can just look at the two drawings and see that they are substantially similar." *Tiseo Architects*, 495 F.3d at 347. The district court explained, however, that the similarities were "balanced" by the defendant's explanation for them: Both designs were based on the defendant business owner's original sketch and incorporated his suggestions for changes, and the options for how to design the addition were extremely limited by zoning requirements and the presence of a load-bearing wall that the plans had to accommodate. *Id.* The district court then relied on the substantial dissimilarities in the materials used, roof line and windows to conclude that the plaintiff had failed to prove the designs were substantially similar. The plaintiff appealed, arguing that the "balancing test" used by the court was improper. The Sixth Circuit affirmed, concluding that in applying what it called a "balancing test," the district court had properly "filtered out" the "unoriginal, unprotectible elements—elements that were not independently created by the inventor, and that possess no minimal degree of creativity—through a variety of analyses." *Id.* at 348 (citing *Kohus*, 328 F.3d at 855). The court explained: "The district court's discussion of the 'explanation' for the 'substantial similarity' between the floor plans merely identifies those unoriginal and uncreative parts of Tiseo Architects' work that are not protectable by copyright. Then, after extracting those unprotectable aspects of Tiseo Architects' drawings, the district court compared the remaining protectable elements to Olson's work, and found that they were not substantially similar." *Id.* This Court finds *Tiseo* to be factually distinguishable and not therefore not particularly relevant to the case at bar.

such as ideas and *scènes à faire* are excluded, the next stop of the inquiry involves determining whether the allegedly infringing work is 'substantially similar' to protectible elements of the artist's work." *Id.* After explaining the law defining how substantial similarity is determined, the court moved on to consider the district court's opinion in that case, and basically came to the conclusion that, although the use *per se* of architectural features it deemed to be "ideas" or "scenes a faire" is not protectible, the expression of these "ideas" is protectible. The court's conclusion demonstrates that the "filtering out" of the unprotectable elements, though theoretically required, generally has no practical effect at all:

> The district court next "filter[ed] out" those elements of [the plaintiff's] design it viewed as unprotectible ideas: domes, wind-towers, parapets, arches, and Islamic patterns. According to the district court, [the plaintiff's] expression of these elements, but not her use of them, is protectible. We agree with this aspect of the district court's decision. In and of themselves, domes, wind-towers, parapets, and arches represent ideas, not expression. Indeed, to hold otherwise would render basic architectural elements unavailable to architects generally, thus running afoul of the very purpose of the idea/expression distinction: promoting incentives for authors to produce original work while protecting society's interest in the free flow of ideas. We also agree that "Islamic" patterns are not protectible, though we would characterize them as *scènes à faire* dictated by the [defendant's] desire that the building express . . . the richness and variety of traditional Arab motifs. . . .
>
> Proceeding item by item, the district court then meticulously compared how the concepts of domes, wind-towers, parapets, arches, and decorative patterns (referred to by the district court as "Islamic" patterns) are expressed in the two designs. "[A]t the level of protectable expression," the district court concluded, "the designs are decidedly different."
>
> Here we part company with the district court. Although we agree that Demetriou's design differs from Sturdza's, we think the district court overlooked several important respects in which Demetriou's design expresses particular architectural concepts quite similarly to Sturdza's. We also see significant similarities in the "overall look and feel" of the two designs.

*Id.* at 1297 (internal citations to the record omitted). In other words, regardless of the fact that the design included numerous features that were unprotectable in the abstract, the court still had to consider the plaintiff's particular *expression* of the unprotected ideas for the purpose of determining whether the defendant's expression of the same ideas was substantially similar to that of the plaintiff and therefore violated her copyright in the design. *See id.* at 1296 ("Considering the works as a whole is particularly important because protectible expression may arise through the ways in which artists combine even unprotectible elements.") In the case of more mundane residential designs, it is obvious that the use of porches, porticos, dormers, and bay windows, for example, is not protected, but the particular expression of those ideas, and their combination in one house, may be protected. *Cf., e.g.*, *Rottlund Co. v. Pinnacle*

*Corp.*, No. Civ.01-1980 DSD/SRN, 2004 WL 1879983 (D. Minn. 2004) ("The use of, for instance, gabled entries, lofts, or fireplaces in this case represent mere ideas that others may utilize without consequence. . . . [H]owever, the Court finds that the selection, arrangement, and combination of the elements expressed in the technical drawings are sufficiently original and detailed to be afforded copyright protection."); *Nelson-Salabes Inc. v. Morningside Holdings*, No. 98-2226, 2001 WL 419002, at *4 (D. Md. Feb. 16, 2001) ("The Court agrees that [plaintiff's] use of certain individual features, such as the bay windows or the octagonal entrance, is neither original nor an expression of artistic merit . . . [However], the Court finds that Nelson-Salabes's combination of common features such as . . . bay windows, the octagonal silo entrance, and gables created a unique design."), *vacated in part on other grounds by* 284 F.3d 505 (4th Cir. 2002); *CSM Investors, Inc. v. Everest Dev., Ltd.*, 840 F. Supp. 1304, 1310 (D. Minn. 1994) ("[T]he use of standard structural elements and the concept of a one-story office showroom are not copyrightable . . . [but] [t]he court concludes that the combination and arrangement of elements and the particular building design embodied in [defendant's] plans and drawings are sufficiently original to be afforded copyright protection.").

The Eastern District of Virginia recently issued a ruling in which it adopted as a matter of principle the need to distinguish between functional and creative elements of an architectural work, but expressly declined to adhere strictly to the "rigid two-step approach" in the architectural-work context, noting that "the originality inquiry is in large part intertwined with the functionality inquiry" to such an extent that "a rigid two-step approach . . . would effectively require the unnecessary adoption and application of a legal fiction. In other words, analyzing and considering thoroughly the originality of a design choice will often require the simultaneous consideration of whether that design choice was made out of functional necessity, particularly where there were only a limited number of ways to express the design choice due to the relevant functional requirements." *Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*, --- F.Supp.2d ----, 2010 WL 2293202, at *15 n.10 (E.D. Va. June 3, 2010). This Court agrees that the "rigid two-step approach" is inappropriate and impracticable in the case at bar.

In sum, contrary to Defendant's suggestion in the case at bar, identifying or "filtering out" the elements of the Plaintiff's designs that represent ideas would not mean that the jury would not still consider those elements in comparing the Betz designs to Defendants' allegedly infringing works.

Defendants claim that in addressing the protectability of the Plaintiff's plans, "the parties may put forth detailed testimony regarding the functionality of the design, the effect of external factors on the designs, and the creativity associated with the designs. If the trial is trifurcated, the Court will be able to utilize the first phase to determine whether the elements of Plaintiff's copyrighted plans are protected, or whether they are unprotected because of, *inter alia*, the doctrines of merger and scènes à faire." (Doc. No. 225, at 7–9.)

The Court already issued summary judgment in favor of the Plaintiff on the question of whether it owns valid copyrights in the subject plans. In doing so, the Court held that Defendants failed to present any admissible evidence to rebut the presumption that the copyrighted plans were independently created by Plaintiff and that the plans possess the requisite minimal degree of creativity.[4] These are the very elements that the Sixth Circuit recognized in *Kohus* as the subject of the "first step" of the substantial-similarity analysis. Under the circumstances, the Court finds that it would not be in the interests of convenience, economy or fairness to conduct a separate bench trial of the issue of which elements of the Plaintiff's designs are protectable as opposed to functional. The Court is persuaded that the designs will be, on the whole, protectable. The jury must decide substantial similarity,[5] and the Court will, of course, instruct the jury as to the law to apply in conducting that inquiry.

To be clear, the Court denies the motion for a separate bench trial on the issue of functionality because there is no need to conduct that inquiry. Plaintiff's designs incorporate numerous functional elements, but the overall designs are protectable.

The Court further declines to conduct separate trials on the issues of substantial similarity and damages, on the basis that the presentation of evidence of damages will likely not be as time-consuming

---

[4] Nor have they presented any evidence to suggest that the Plaintiff's designs are constrained by external factors to the extent the design in *Tiseo Architects* was.

[5] With respect to Defendants' contention that architectural works that incorporate a minimum of creativity, such as Plaintiff's home designs, are "compilations" and as such entitled only to the "thinnest" protection, the Court finds that, appealing as this argument may be, it is not supported by the language of the AWCPA or any Sixth Circuit opinion. The Eleventh Circuit's opinion in *Intervest Construction, Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914 (11th Cir. 2008), well reasoned and persuasive as it is, appears to be somewhat of an outlier even within the Eleventh Circuit. Notwithstanding, in light of the exclusion of "individual standard features" from copyright protection, 17 U.S.C. § 101, and the fact that "[t]he variety of ways a two-story rectangle can be divided into three bedrooms, two baths, a kitchen, a great room or living room, closets, porches, etc., is finite," "modest dissimilarities [in this type of architectural plan] are more significant than they may be in other types of art works." *Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir. 1992) (comparing country style frame house floor plans).

and confusing as Defendants suggest. Moreover, conducting a separate trial on the issue of damages is equally as likely to lengthen and complicate the proceedings as to shorten and simplify them.

Defendants' motion is **DENIED**.

The matter is referred back to the Magistrate Judge for further case management as necessary.

It is so **ORDERED**.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge